OVERSIGHT BOARD TO THE SUCCESSOR AGENCY OF THE
REDEVELOPMENT AGENCY OF THE CITY COUNTY OF SAN FRANCISCO

RESOLUTION NO. 14-2015
*Adopted November 23, 2015*

AUTHORIZING REVISIONS TO THE SUCCESSOR AGENCY'S LONG-RANGE PROPERTY MANAGEMENT PLAN GOVERNING THE DISPOSITION OF REAL PROPERTY UNDER REDEVELOPMENT DISSOLUTION LAW

WHEREAS, The Redevelopment Agency of the City and County of San Francisco, a public body (the "Former Redevelopment Agency"), was dissolved on February 1, 2012, pursuant to California Health and Safety Code Sections 34170 et seq. (the "Redevelopment Dissolution Law"); and,

WHEREAS, As a result of dissolution, all of the Former Redevelopment Agency's non-housing assets, including all real property, were transferred to the Successor Agency to the Redevelopment Agency of the City and County of San Francisco (the "Successor Agency") (commonly known as the Office of Community Investment and Infrastructure or "OCII"), and the Successor Agency assumed all of the authority, rights, powers, duties, and obligations of the Former Redevelopment Agency that remained after its dissolution. Cal. Health & Safety Code 34173 (a)

WHEREAS, On November 25, 2013, by Resolution No. 12-2013, the Oversight Board approved the Successor Agency's Long-Range Property Management Plan (the "2013 PMP") and the 2013 PMP was subsequently transmitted to the State Department of Finance ("DOF"), pursuant to Redevelopment Dissolution Law; and,

WHEREAS, The 2013 PMP provided an inventory and disposition plan for all the property OCII owns or leases now or in the future in the major approved project areas (Transbay, Mission Bay, and Hunters Point Shipyard/Candlestick Point) as well as OCII's properties in expired redevelopment project areas (Yerba Buena Center, Hunters Point, South of Market, Western Addition A-2, and Golden Gateway), and elsewhere in San Francisco (the "Agency Property"); and,

WHEREAS, Certain of the non-housing properties included in the 2013 PMP – namely Yerba Buena Gardens, the Fillmore Heritage Center, and 345 Williams – were purchased with federal urban renewal grant funds (the "CDBG Properties") under contracts approved by the U.S. Department of Housing and Urban Renewal (the "HUD Contracts"). See attached list of CDBG Properties, Exhibit A. Under the HUD Contracts, the Former Redevelopment Agency was required to use the federal funds to carry out redevelopment activities in accordance with various redevelopment plans and the federal standards for

urban renewal under Title I of the Housing Act of 1949. Upon the demise of the federal urban renewal grant program, HUD required that the Former Redevelopment Agency treat all future proceeds from the sale or lease of the CDBG Properties as program income under the federal Community Development Block Grant ("CDBG") program; and,

WHEREAS, The Former Redevelopment Agency, and now the Successor Agency, have held the CDBG Properties for the governmental purposes described in the CDBG program (See Title 24 in the CFR, Section 570.201 (completion of urban renewal projects under Title I of the Housing Act of 1949) and Title 24 in the CFR, Section 570.800 (pre-1996 federal urban renewal regulations continue to apply to completion of urban renewal projects)) (the "CDBG Program Requirements") and all future proceeds from the sale or lease of the CDBG Properties will be treated as program income under the CDBG Program Requirements. See Exhibit B, Western Addition Area Two Redevelopment Project Closeout Agreement; Exhibit C, Letter, H. Dishroom to D. Feinstein (August 15, 1983); and Exhibit D, Letter, M. Cremer to O. Lee (September 26, 2014); and,

WHEREAS, Pursuant to Redevelopment Dissolution Law, the 2013 PMP included information about date of acquisition, purpose of acquisition, parcel data, current value, revenue generation, environmental contamination, potential for transit-oriented development, and previous development proposals for each Agency Property. The 2013 PMP also categorized each property by one of four permissible uses: (1) retention for governmental use; (2) retention for future development; (3) disposition; or (4) use of the property to fulfill an enforceable obligation; and,

WHEREAS, DOF has completed its review of the 2013 PMP and has requested that OCII revise and update the 2013 PMP and submit a revised version to both the Oversight Board and DOF for approval (the "Revised PMP"). The Revised PMP, attached hereto as Exhibit E, includes updates to the inventory of Agency Property, given that a number of acquisitions and dispositions have occurred since 2013 and the Redevelopment Dissolution Law has been recently amended, as well as updates to future acquisition/disposition dates and corrections to property-related data such as Assessor Parcel Numbers, lot sizes, and addresses; and,

WHEREAS, The Revised PMP also includes new disposition plans for three properties: 1) the Fillmore Heritage Center Garage, (2) the Fillmore Heritage Center Commercial Parcel, and (3) 345 Williams Avenue; and,

WHEREAS, The new disposition plan for the Fillmore Heritage Center Garage Parcel is a transfer to the City and County of San Francisco (the "City") for a governmental purpose – that is, a public parking garage – pursuant to Section 34181(a)(1) of the California Health and Safety Code. Under recent

amendments to Redevelopment Dissolution Law, the Garage Parcel meets the definition of a parking facility dedicated solely to public parking because it does not "generate revenues in excess of reasonable maintenance costs." Section 34181 (a) (2) of the California Health and Safety Code; and,

WHEREAS, The new disposition plan for the Fillmore Heritage Center Commercial Parcel is a transfer to the City for future redevelopment pursuant to Sections 34191.5(c)(2)(A)(i)-(ii) of the California Health and Safety Code. Consistent with these Sections, the development of the Commercial Parcel was included in the Former Redevelopment Agency's 1999-2004 and 2004-2009 Implementation Plans for the Western Addition A-2 Redevelopment Project Area. A transfer to the City will ensure: (1) that the original community development purpose for acquiring the property continues to be met and (2) that the Former Redevelopment Agency's economic development goals for the property – that is, the development of the property as a catalyst to the successful revitalization of the lower Fillmore Street commercial corridor and the creation of employment opportunities for the community – continue to be met; and

WHEREAS, The new disposition plan for 345 Williams Avenue is a transfer to the City for future redevelopment pursuant to Section 34191.5(c)(2)(A)(i)-(ii) of the California Health and Safety Code. Transferring the site to the City will ensure (1) that the original economic development purpose for acquiring the site – that is, to develop a full-service supermarket in an underserved neighborhood – continues to be met and (2) that the objective in the City's 2014-2015 Action Plan for CDBG activities related to the development of a new grocery store in the Bayview Hunters Point area is fulfilled; and

WHEREAS, Under Section 34191.5(c)(2)(A)(i)-(ii) of the California Health and Safety Code, the Oversight Board or DOF may require approval of a compensation agreement, as described in Section 34180(f), prior to the transfer of property that the City retains for future redevelopment activities. The compensation agreement requires the City and other taxing entities to reach agreement on payments proportionate to their share of base property taxes for the value of the property retained. In the case of the Fillmore Heritage Center Commercial Parcel and 345 Williams Avenue, the Successor Agency is recommending that the payments under the compensation agreement consist of covenants and conditions on these properties restricting their use and any future disposition to purposes consistent with the CDBG Program Requirements, and with the economic development objectives for these properties, as defined in redevelopment, five-year implementation or community plans; and

WHEREAS, Pursuant to Redevelopment Dissolution Law, OCII must have a DOF-approved PMP by January 1, 2016 to avoid the application of those provisions of Redevelopment Dissolution Law requiring DOF's review and approval of each property disposition. After DOF's final approval of the Revised PMP, individual implementing actions related to the Revised PMP – such as the

|  |  |
|---|---|
|  | acquisition or disposition of property – do not require further approvals by the Oversight Board or DOF; and, |
| WHEREAS, | The Revised PMP is required under Redevelopment Dissolution Law as part of the wind down of the activities of the Former Redevelopment Agency and, if approved by the Oversight Board and DOF, the Revised PMP is not a project under Section 15378 (b)(5) of the California Environmental Quality Act ("CEQA") Guidelines because it is an organization or administrative activity that will not result in a direct or indirect physical change in the environment; now therefore be it |
| RESOLVED, | That the Oversight Board hereby finds that the Revised PMP is exempt from CEQA for the reasons stated above and approves the Revised PMP, substantially in the form attached hereto as Exhibit E, for the subsequent disposition of the Agency Property; and be it further |
| RESOLVED, | That the Oversight Board authorizes OCII, upon approval of the Revised PMP by DOF, to take all actions as needed, to the extent permitted under applicable law, to effectuate compliance with the Revised PMP. |

Exhibit A:   CDBG Properties
Exhibit B:   Western Addition Area Two Redevelopment Project Closeout Agreement
Exhibit C:   Letter, H. Dishroom to D. Feinstein (August 15, 1983)
Exhibit D:   Letter, M. Cremer to O. Lee (September 26, 2014)
Exhibit E:   Revised Long-Range Property Management Plan

I hereby certify that the foregoing resolution was adopted by the Oversight Board at its meeting of November 23, 2015.

_____
Oversight Board Secretary