ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**10/12/2018**
Clerk of the Court
BY:EDWARD SANTOS
Deputy Clerk

JAMES A. QUADRA, State Bar No. 131084
REBECCA COLL, State Bar No. 184468
ROBERT D. SANFORD, State Bar No. 129790
QUADRA & COLL, LLP
649 Mission Street, Fifth Floor
San Francisco, CA 94105
Telephone: (415) 426-3502
Facsimile: (415) 625-9936

Attorneys for Defendants and Cross-Complainants
Fillmore Development Commercial, LLC and
Em Johnson Interest, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL E. JOHNSON; FILLMORE DEVELOPMENT COMMERCIAL, LLC; EM JOHNSON INTEREST, INC.; URBAN CORE DEVELOPMENT, LLC; and DOES 1-10, inclusive;<br><br>Defendants.<br><br>FILLMORE DEVELOPMENT COMMERCIAL, LLC; EM JOHNSON INTEREST, INC.;<br><br>Cross-Complainants,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ROES 1-50, inclusive,<br><br>Cross-Defendants. | Case No.: CGC-18-568954<br><br>**CROSS-COMPLAINT BY FILLMORE COMMERCIAL, LLC AND EM JOHNSON INTEREST, INC. AGAINST CROSS-DEFENDANT CITY AND COUNTY OF SAN FRANCISCO** |

Cross-Complainants Fillmore Development Commercial, LLC and Em Johnson Interest, Inc. allege as follows:

**THE PARTIES**

1. Cross-Complainant Fillmore Development Commercial, LLC ("FDC") is a limited liability company formed and duly organized under the laws of the State of California.

2. Cross-Complainant Em Johnson, Interest, Inc. ("EJI") is a corporation formed and duly organized under the laws of the State of California, and the managing member of FDC.

3. Cross-Defendant City and County of San Francisco ("City") is a municipal corporation organized and existing under and by virtue of the laws of the State of California. Since this Cross-Complaint arises out of the allegations of the Complaint, FDC and EJI are not required to file a government claim under Government Code §§900 *et seq.* (*People ex rel. Dep't of Parks & Recreation v. W.-A-Rama, Inc.* (1973) 35 Cal. App. 3d 786, 794 (1973))

4. FDC and EJI are ignorant of the true names and capacities of Cross-Defendants sued herein as ROES 1 through 50 and therefore sues such Cross-Defendants by fictitious names. FDC and EJI will amend this Cross-Complaint to allege the true names and capacities of ROES 1 through 50 when ascertained. FDC and EJI are informed and believe that each of said Cross-Defendants designated herein is legally responsible and liable in the same manner for the events and happenings described herein and for the causes of action alleged herein, and are therefore liable and responsible to FDC and/or EJI for an amount be determined or for such other relief as may be afforded.

5. FDC and EJI are informed and believe that each Cross-Defendant specifically or fictitiously named herein acted in his, her or its own right and is the agent, employee, representative or co-conspirator of some or all of the other Cross-Defendants, as to each of the matters set forth herein. Each such Cross-Defendant, whether specifically or fictitiously named, was at all times acting within the scope and purpose of such agency, employment, representation or conspiracy, or alternatively, if the acts of each such Cross-Defendant were not authorized at the time, such acts were subsequently ratified by the appropriate principal and Cross-Defendants.

**INTRODUCTION**

6. As alleged below, the City engaged in bad faith conduct against FDC, EJI and Defendant Michael Johnson ("Johnson") regarding the development of the Fillmore Heritage Center Project (the "Project") as a jazz entertainment venue and restaurant, which is only the latest of the City's misguided attempts over the past several decades to redevelop the Fillmore District in San Francisco. The City persisted in attempting to operate the Project as a jazz club and restaurant, even when it became readily apparent that this use was not economically viable. After the failure of two jazz clubs, including the renowned Yoshi's, the City refused to allow FDC to attract investors willing to use the property for a different commercial purpose that would generate enough revenue to ensure the Project's economic success. As a result, the City breached its obligation under a lease with FDC to permit a different use. Furthermore, the City acted in bad faith by failing to honor its promise documented in a written term sheet executed by the City and FDC to negotiate and finalize restructuring of a ground lease and loans related to the Project, which included an agreement that FDC would transfer its interest under the lease to the City in exchange for a full release of any claims by the City. In short, rather than focus limited public resources to successfully revitalize the Fillmore District and assist the economic and cultural well-being of District residents, the City has engaged in bad-faith tactics while the Project has remained vacant for years.

**FACTUAL ALLEGATION**

7. The Redevelopment Agency of the City and County of San Francisco (the "Agency"), a political subdivision of the City, entered into a written Disposition and Development Agreement ("DDA"), dated May 18, 2004, with Fillmore Development Associates, LLC ("FDA"), an entity related to FDC. Under the DDA, FDA developed certain real property owned by the Agency and commonly known as 1300-1330 Fillmore Street in the Fillmore District of San Francisco (the "Property"). FDA secured over $50 million in private financing to develop and construct a mixed-use commercial and residential project on the Property, known as the Fillmore Heritage Center Project (the "Project"). Consistent with the City's redevelopment

plan, the Project's goal was to help revitalize the economy of the historic Fillmore Jazz Preservation District, while preserving and celebrating the District's jazz history. In 2007, FDA completed construction of the Project, which consists of approximately 40,000 square feet of commercial space, approximately 80 condominiums and a public parking garage.

8. Pursuant to a Ground Lease Agreement dated as of August 23, 2005 ("Lease"), between the Agency and FDC, FDC leased the commercial portion of the Property ("Commercial Parcel") from the Agency. A true and correct copy of the Lease is attached as **Exhibit A** and incorporated herein by reference.

9. In order to develop and construct the Commercial Parcel, FDC obtained financing in the amount of $5.5 million ("Loan") from the City through the Mayor's Office of Community Development ("MOCD"). The Loan was evidenced by a written Loan Agreement, a copy of which is attached as Exhibit A to the Complaint, and a Promissory Note ("Note"), a copy of which is attached as Exhibit B to the Complaint. The FDC's obligations under the Note were secured by assets of FDC, including its leasehold interest in the Commercial Parcel under the Lease. EJI guaranteed the Loan pursuant to a written Guaranty, a copy of which is attached as Exhibit C to the Complaint.

10. At the time FDC entered into the Lease and Loan Agreement, London Breed ("Breed") was a Commissioner of the Agency. Breed has been involved in the City's bad faith misconduct towards FDC regarding the Lease and Property, and the City's dealings with FDC from the inception of the Project through the present as alleged herein, whether as an Agency Commissioner, the former Supervisor of District 5 where the Property is located, or the current Mayor of the City. Other City representatives involved in the bad faith wrongdoing include Naomi Kelly, the City's current Administrator, and Steve Cawa, the former Chief of Staff of former Mayor Ed Lee.

11. Under Section 18.1 of the Lease, the Agency and FDC agreed that a jazz club and restaurant would be a permitted of use the Commercial Parcel, but further agreed:

> [i]f the Jazz Club and the Restaurant open and have operated for at least twelve (12) months, but then fail and the Tenant [FDC] demonstrates that it has used all

reasonable efforts to obtain a substitute entertainment and/or restaurant subtenant for at least six (6) months, **then Tenant may use the Premises for any general retail and/or commercial use which use enhances the jazz district theme, or if such uses do not enhance the jazz district theme then they are not in conflict with the jazz district theme and address other redevelopment goals and purposes, including meeting community benefit objectives such as community economic development goals, and are approved by the Agency which approval shall not be unreasonably withheld.**

(emphasis added).

12. As provided by Section 18.1 of the Lease, FDC obtained the agreement of Yoshi's, a well-known jazz club and restaurant in Oakland, to open and operate a venue in the Commercial Parcel, which the City understood was crucial to the Project's success as the anchor tenant and which furthered the City's redevelopment plan to revitalize the Fillmore Jazz Preservation District. Yoshi San Francisco, LLC ("Yoshi's SF") opened its jazz club and restaurant in December 2007 in a portion of the Commercial Parcel.

13. While other commercial tenants occupied the Project, including Food for Soul which operated a restaurant known as "1300 on Fillmore" and the non-profit Jazz Heritage Center, Yoshi's SF was the anchor tenant so, as known to the City, the success of Yoshi's SF was crucial to the Project's viability and to FDC's ability to pay the Loan. Yoshi's SF suffered net losses exceeding $350,000 each year during the six years it was open, despite generating an average of $10 million in annual revenue. The revenue generated by the subtenants of the Commercial Parcel was never sufficient to cover FDC's operating expenses, including payment of the Loan. From the date of the Lease and Loan Agreement, the use of the Commercial Parcel as a jazz club and restaurant, and the other theme restaurants and ventures, failed to generate sufficient revenue for FDC to meet all its obligations under the Loan, an economic reality that FDC repeatedly told representatives of the Agency and MOCD, but which the City never accepted. Instead, the City continued to insist that the Commercial Parcel had to have a jazz entertainment venue consistent with the City's misguided redevelopment vision for the Fillmore Jazz Preservation District.

14. In 2010, FDC and the City renegotiated the terms of the Loan Agreement and Note in an attempt to address FDC's difficulty making timely payments under the Note as a

result of the issues with the economic viability of the Commercial Parcel. As a result, the parties entered into the First Amendment to Loan Agreement and Promissory Note ("Loan Amendment"), dated December 8, 2010, a copy of which is attached as Exhibit D to the Complaint. Under the Loan Amendment, the parties agreed to a payment plan for FDC to pay the delinquent amount due under the Note while continuing to make future payments as they became due under the Note.

15. The Project continued to suffer economic difficulties after the Loan Amendment because the rent from Yoshi's SF and Food for Soul remained inadequate to service the Loan and cover the full operating expenses, even as adjusted by the Loan Amendment. In or about November 2012, the managing member of Yoshi's SF filed bankruptcy on behalf of Yoshi's SF under Chapter 11 of the United States Bankruptcy Code without the consent of FDC or the other members of Yoshi's SF. Yoshi's SF did not reorganize in bankruptcy and ceased operating the jazz club and restaurant, although a successfully reorganized Yoshi's SF would have improved the economic viability of the Project. The City did not make any effort to assist Yoshi's SF during its attempt to reorganize in bankruptcy or, following the bankruptcy, cooperate with FDC in a further re-structuring of the Loan which was required if a jazz club and restaurant operations were to continue in the Commercial Parcel as the City demanded.

16. In February 2012, the Agency was succeeded by the San Francisco Office of Community Investment and Infrastructure ("OCII").

17. In connection with the bankruptcy of Yoshi's SF, the OCII and the Mayor's Office of Housing and Community Development ("MOHCD"), agreed to a written term sheet, dated March 3, 2014 ("Term Sheet"), with FDC and affiliated entities. Under the Term Sheet, the parties agreed to negotiate in good faith the restructuring of the Loan and Lease. A true and correct copy of the Term Sheet is attached as **Exhibit B** and incorporated herein by reference. Among the terms, the City agreed to accept a "deed in lieu" of FDC's interest in the Lease in exchange for forgiveness of the amounts owed the City. Although required under the Term Sheet, the City failed to negotiate the restructuring of the Loan and Lease in good faith.

18. With the approval of the bankruptcy court on or about June 24, 2014, Yoshi's SF and its creditors agreed to restructure its debt and assign certain liabilities and its sublease of the jazz club/restaurant to Fillmore Live Entertainment Group, LLC ("FLEG"), a new entity that was formed as provided by the Term Sheet by several investors, including Johnson. The investors contributed over $1.0 million to establish FLEG in an attempt to preserve over 100 existing jobs by reopening a new jazz club and restaurant in the Commercial Parcel called "The Addition" on or about July 1, 2014. FLEG was formed in part because the City continued to insist that the Commercial Parcel be used as a jazz entertainment venue.

19. In January 2015, FLEG was forced to close The Addition due to operating losses. Like Yoshi's SF, The Addition could not generate sufficient revenue to pay operating expenses such rent and loans it assumed from Yoshi's SF. Eight years after Yoshi's SF opened, the City still refused to recognize that a jazz club and restaurant could not be the anchor tenant.

20. In a letter dated February 20, 2015, the MOHCD notified FDC that it was in default under the Loan Agreement and Note, and demanded payment of over $2.0 million by March 2, 2015. In a second letter dated February 20, 2015, OCII notified FDC that it was in default under the Lease, including Section 18.1 of the Lease because FDC had purportedly abandoned a portion of the Commercial Parcel which had to be continuously operated for the permitted use of a jazz club.

21. FDC advised the OCII and MOHCD that FDC was taking steps to address the default by entering into negotiations with a group of investors to recapitalize or restructure FDC and to obtain a new anchor tenant for the Commercial Parcel to operate a music entertainment venue and restaurant. In a letter, dated March 13, 2015, to Tiffany Bohee of OCII and Olson Lee of MOHCD, FDC memorialized these efforts, which included meetings with then Supervisor Breed among others. OCII and MOHCD did not respond to FDC's March 13 letter.

22. FDC sent a letter of intent, dated April 10, 2015, to OCII and MOHCD to memorialize discussions between FDC and the City that included refinancing the Loan, paying back taxes and amounts due under the Lease, and securing a financially viable anchor tenant for

the Project. FDC provided to the City letters of intent from two possible tenants which included one proposing to invest in FDC. The OCII and MOHCD never responded to FDC's April 10, 2015 letter.

23. In a letter dated May 31, 2015 to OCII and MOHCD, FDC summarized its efforts to locate a new anchor tenant, which included discussing the opportunity with over ten potential tenants and/or investors. The May 31 letter outlined issues with attracting new tenants in the entertainment business, including the prohibitively high rent required to service the Loan and concern about OCII requiring payment of the loan for tenant improvements. Nonetheless, the May 31 letter included four potential tenants and/or investors, including potential tenants in the restaurant business and other retail uses allowed under the Lease.

24. The City responded in a letter dated June 5, 2015 from the OCII to FDC, in which the City terminated the Lease and FDC's right to possession of the Property.

25. In a letter dated June 22, 2015, FDC's counsel advised the OCII that it had obtained a letter of intent from a national grocery store chain, later identified to the City as Whole Foods, which offered a refinancing opportunity to cure the default under the Lease and the Loan, and generate a substantial amount of capital that could be reinvested by the City into the neighborhood. Under the FDC's proposal, which was supported by several community leaders, the Commercial Parcel would have included a brew pub/live music venue, as well as jazz at the club at 1300 Fillmore Street. FDC's proposal also included refinancing to buy-out the Lease.

26. The OCII responded to the June 22 letter with a letter dated July 21, 2015, in which the City refused to cooperate with FDC's efforts to restructure the Loan and attract a new tenant.

27. In a letter dated July 6, 2015 to the City, FDC advising that FDC had a draft letter of intent from Whole Foods to operate a grocery store, restaurant and brew pub with live performances. The July 6 letter identified other potential investors interested in restructuring the

Loan. In the July 6 letter, FDC requested that the City reinstate the Ground Lease for a period of 90 days in order to facilitate a new investment. The City did not respond.

28. In August 2015, the City issued a public statement with responses to "frequently asked questions" that continued to insist that the Commercial Parcel would be used as an entertainment venue, despite the economic reality that this use did not generate enough revenue to service the Loan and other expenses.

29. The MOHCD sent a notice of default, dated October 21, 2015, to FDC demanding that EJI pay all sums due under the Guaranty. This demand was contrary to the City's representation that the City would not seek to enforce the Guaranty if FDC and EJI cooperated with the City's taking possession of the Commercial Parcel. Despite the October 2015 demand, the City then went silent, leading FDC to believe the City would honor it representations that it would not enforce the Note and Guaranty. However, while FDC cooperated so the City took possession of the Commercial Parcel, the City filed this action three years later (with no interim communication) in an attempt to enforce the Note against FDC and the Guaranty against EJI, as well as attempt to improperly hold Johnson and Defendant Urban Core Development LLC liable as alleged alter egos of FDC without factual or legal bases.

### FIRST CAUSE OF ACTION
### Breach of Lease

30. Cross-Complainants incorporate by reference the allegations of all preceding paragraphs as if fully set forth here.

31. FDC fully performed all of its obligations under the Lease to the extent those obligations were not excused by impossibility, frustration of purpose, and/or the City's failure to allow FDC to sublet the Commercial Parcel to subtenants with the ability to generate sufficient revenue as allowed by Section 18.1 of the Lease.

32. The City breached the Lease, in part by refusing to allow FDC to sublet the Commercial Parcel for general retail and/or commercial use that enhanced or did not conflict with the jazz district theme, as provided by Section 18.1

33. As the result of the City's breach of the Lease, FDC has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of Loan Agreement and Promissory Note

34. Cross-Complainants incorporate by reference the allegations of all preceding paragraphs as if fully set forth here.

35. FDC fully performed all of its obligations under the Loan Agreement and Promissory Note to the extent those obligations were not excused by impossibility, frustration of purpose, and/or the City's breach of the implied covenant of good faith and fair dealing.

36. The City breached the implied covenant of good faith and fair dealing in the Loan Agreement and Promissory Note, in part by refusing to act in good faith to negotiate the terms outlined in the Term Sheet.

37. As the result of the City's breach of the Loan Agreement and Promissory Note, FDC has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Breach of Guaranty

38. Cross-Complainants incorporate by reference the allegations of all preceding paragraphs as if fully set forth here.

39. EJI fully performed all of its obligations under the Guaranty to the extent those obligations were not excused by impossibility, frustration of purpose, and/or the City's breach of the implied covenant of good faith and fair dealing.

40. The City breached the implied covenant of good faith and fair dealing in the Guaranty, in part by refusing to act in good faith to negotiate and perform the terms outlined in the Term Sheet.

41. As the result of the City's breach of the Loan Agreement and Promissory Note, EJI has been damaged in an amount to be proven at trial.

## PRAYER

Cross-Complainants pray as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For reasonable attorney fees and costs; and

3. For such other and further relief as the Court deems just.

DATED: October 12, 2018                    QUADRA & COLL, LLP

By: _____
    JAMES A. QUADRA
    REBECCA COLL
    ROBERT D. SANFORD

    Attorneys for Michael E. Johnson; Fillmore Development Commercial, LLC; Em Johnson Interest, Inc.; Urban Core Development, LLC

## PROOF OF SERVICE

I, Rebecca Coll, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action. I am a partner at Quadra & Coll, 649 Mission Street, Fifth Floor, San Francisco, CA 94105.

On October 12, 2018, I served the attached:

**CROSS-COMPLAINT BY FILLMORE COMMERCIAL, LLC AND EM JOHNSON INTEREST, INC. AGAINST CROSS-DEFENDANT CITY AND COUNTY OF SAN FRANCISCO**

on the interested party listed below as follows:

DENNIS J. HERRERA
CHERYL ADAMS
THOMAS LAKRITZ
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, CA 94102
Tom.Lakritz@sfcityatty.org

By the following method:

☐ **BY ELECTRONIC MAIL**: The parties to this action have agreed in writing that service of papers in this case may be accomplished via electronic mail, and that such service shall constitute service by hand. Per that agreement, I sent the foregoing document(s) as PDF files to the foregoing email addresses prior to 5:00 p.m. on today's date.

☒ **BY ELECTRONIC SERVICE**: I hereby certify that I electronically served the documents(s) listed above by using the One Legal system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: October 12, 2018

By: _____
Rebecca Coll