BEN ROSENFELD (SBN 203845)
PIER 5 LAW OFFICES
3330 Geary Blvd., 3rd Floor East
San Francisco, CA 94118
Tel:     (415) 285-8091
Fax:     (415) 285-8092
ben.rosenfeld@comcast.net

TESFAYE W. TSADIK (SBN 108103)
LAW OFFICES OF TESFAYE TSADIK
528 Grand Avenue
Oakland, CA 94610
Tel:     (510) 839-3922
ttsadik@pacbell.net

Attorneys for Plaintiff
AGONAFER SHIFERAW

DAVID CHIU, State Bar #189542
City Attorney
THOMAS S. LAKRITZ, State Bar #161234
RYAN C. STEVENS, State Bar # 306409
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Tel:     (415) 554-3975 (Stevens)
Tel:     (415) 554-3963 (Lakritz)
Fax:     (415) 554-3837
tom.lakritz@sfcityatty.org
ryan.stevens@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN
FRANCISCO, LONDON BREED, AMOS
BROWN, JOAQUIN TORRES, and
VALLIE BROWN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGONAFER SHIFERAW, dba FILLMORE ENTERTAINMENT COMPLEX /REPUBLIC OF FILLMORE, LLC, <br><br> Plaintiff(s), <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al, <br><br> Defendant(s). | Case No. 3:18-cv-06830-RS <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Date:   March 17, 2022 <br> Time:   10:00 am. <br> Ctrm:  Via Video Conference <br> Judge: Hon. Richard Seeborg |

The parties to the above-entitled action jointly submit this JOINT CASE

MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern

District of California, Civil Local Rule 16-9, and the Court's January 25, 2022 Order (Dkt.

#152.)

**Short Update**

    **Defendants' Pending Motion for Summary Judgment/Partial Summary Judgment:**

    This case, originally filed on November 9, 2018, and originally assigned to Honorable Judge Saundra B. Armstrong, is pending the Court's rulings on Defendants' Motion for Summary Judgment/Partial Summary Judgment and Motion to Strike Plaintiff Shiferaw's Declaration in Opposition thereto, filed on March 29, 2021 and May 25, 2021, respectively.

    Plaintiff has opposed both of Defendants' pending motions, and Defendants have replied in support thereof.  Thus, these matters are fully briefed.

    Defendants originally noticed their motions for hearing on April 28, 2021.

    On May 28, 2021, Judge Armstrong vacated the hearing date and took the motions under submission on the papers.

    On January 25, 2022, this matter was reassigned to Honorable Judge Richard Seeborg, with a concomitant Order that any pending motions be re-noticed on a new hearing date.

    On February 9, 2022, Defendants re-noticed their motions for hearing on March 3, 2022.

    On February 23, 2022, the Court ordered that Defendants' motions are submitted without oral argument pursuant to Civil Local Rule 7-1(b).

    **No Current Trial Date:**

    No current trial date is set in this matter. The last trial date of November 8, 2021 was vacated by the Court on September 15, 2021, pursuant to the parties' joint administrative motion to continue the trial, filed on September 10, 2021, pending the Court's rulings on Defendants' pending motions. Prior to that, the parties had variously requested, and the Court had granted, other trial continuances.

    **Discovery is Closed:**

    Discovery closed on February 26, 2021.  See Stipulation and Order of December 24, 2021 (Dkt. #95), and Order of March 15, 2021 (Dkt. #119) noting that apart from the law and motion cutoff date, which the Court extended until April 28, 2021, "[a]ll other deadlines remain unchanged."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.  Jurisdiction & Service**

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding persona jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

      The Court has subject-matter jurisdiction of this lawsuit and the causes of action pleaded herein under the Federal Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986, and 1988, for violations of the Fifth and Fourteenth Amendments to the United States Constitution; and under the Judicial Code, 28 U.S.C. §§ 1331, 1343(a)(1-4), and 1367(a) (supplemental jurisdiction of state law claims).

**2.  Facts**

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

      **Plaintiff's Summary of Facts:**

      This is a civil rights and taxpayer lawsuit brought by Agonafer Shiferaw, a successful San Francisco businessman of Ethiopian heritage, on his own behalf and on behalf of San Francisco (and particularly Fillmore District) residents, concerning the City's historic Fillmore Heritage Center (the "Center").  The Center is a multi-use building built with public funds (including federal funds), intended to serve as the flagship entertainment and cultural center, anchoring efforts to renew the District's historical role as thriving cultural and economic center for San Francisco's African American community.

      Mr. Shiferaw alleges that for more than a decade, defendants, comprised of the City of San Francisco and several City departments and officials, together with the San Francisco Office of Community Investment and Infrastructure ("OCII"), a State agency, have allowed the Center to remain effectively shut down, through multiple acts of malfeasance and nonfeasance.  Mr. Shiferaw alleges that Defendants' wrongful acts include: (1) repeatedly turning the building over to tenants unqualified to run the Center and businesses located within in it through various and successive sweetheart deals reached with friends and political allies of local officials: (2) the failure to seek payment, and ultimate unjustified waiver, of multiple millions of dollars in rents

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and loans owed by these friends and allies to the City and its residents; (3) the operation of a fraudulent "Request for Proposal" ("RFP") process which was designed from the beginning as a smokescreen to enable defendants to steer control of the Center to cronies rather than review bids in good faith; (4) the failure to consider Mr. Shiferaw's response to the RFP in good faith, or in compliance with State and local laws and ordinances governing competitive bidding and government contracts; (5) the abrupt cancellation of the RFP, after Mr. Shiferaw confronted defendants with multiple  violations of laws and ordinances designed to safeguard government contracts and bidding; and (6) discrimination against Mr. Shiferaw, who has unsuccessfully sought for years to purchase and operate the Center, based on his ethnicity and his refusal to participate in "pay-to-play" side deals with defendants.

Today, the Center is effectively shuttered again, in the wake of shooting on March 23, 2019 that left one person dead and several injured, apparently caused in part by the City's interim tenants' recklessness in failing to hire adequate security for a memorial for a controversial figure (self-described as former pimp and drug kingpin).  In effect, as a result of defendants' malfeasance and neglect, the Fillmore Heritage Center has been lost as a resource to San Francisco and to the Fillmore District Community since its closure in 2015.  On top of that, defendants are now sending signals that they are considering redefining the Center's benefits to the community, potentially repositioning themselves to try again to gift it to cronies for uses unrelated to its heritage.  The negative social and financial effects on the community has been, and continues to be, serious.

Mr. Shiferaw seeks injunctive and monetary relief.

**Defendants' Summary of Facts:**

Plaintiff submitted a bid in response to a Request for Proposal ("RFP") for a business to purchase certain property from CCSF and operate a business at that property.  The RFP expressly stated that CCSF reserved the right to cancel that RFP at any time and for any reason.  After an independent review by a third-party consultant.  Plaintiff's proposal received the lowest score of all proposal.   Indeed, none of the proposals were very strong.  In any event, CCSF exercised the right to cancel the RFP and not continue with the project.  CCSF did not continue with the

project.  CCSF contends that the RFP and the cancellation of the RFP were lawful.  CCSF's current use of the property is lawful.  CCSF further contends that Plaintiff is entitled to no relief, injunctive or monetary. See Defendants' statement of legal issues below.

### 3.  Legal Issues

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

**Plaintiff's Statement Of Legal Issues:**

a.  Whether discretion extended to government officials in connection with the government bidding process permits officials to fraudulently induce reliance on the process, and cancel it abruptly based on the same fraudulent intent;

b.  Whether Mayor (then-Supervisor) London Breed and her fellow Defendant City officials used the RFP process as a cover and a sham while they worked behind the scenes to award the Fillmore Heritage Center to supporters and cronies, including by conducting this City business over the Mayor's private email and in private meetings;

c.  Whether Defendants discriminated against Plaintiff Shiferaw based on his race and ethnicity in the process;

d.  Whether plaintiff and the citizens of San Francisco are entitled to monetary and injunctive relief, respectively, including to prevent the City from further wasting valuable taxpayer resources, including by misusing the Center to reward political cronies rather than for its stated and intended purposes as a cultural center and economic engine for the Fillmore District.

In response to Defendants' statement of legal issues below, Plaintiff refers the Court to Plaintiff's papers in opposition to Defendants' motion for summary judgment.

**Defendants' Statement Of Legal Issues:**

As set forth in Defendants' pending motion for summary judgment, all of Plaintiff's causes of action fails. *First*, Plaintiff's fourth cause of action for denial of equal protection fails because Plaintiff did not (and cannot) establish that the Individual Defendants acted with an

intent to discriminate against him based on his race, ethnicity, Ethiopian origin, and/or immigrant status, or that he was treated differently from the other Request for Proposal ("RFP") applicants. *Second*, Plaintiff's fifth cause of action for retaliation fails because Plaintiff did not (and cannot) establish that the Individual Defendants gave preferential treatment to competitors and that such conduct was motivated by Plaintiff's exercise of his protected right to free expression and to petition the government for redress of grievances. Moreover, the Individual Defendants are entitled to qualified immunity because whether Plaintiff has standing to bring this cause of action has not been determined by the U.S. Supreme Court or the Ninth Circuit. *Third*, Plaintiff's sixth cause of action for conspiracy to violate his constitutional rights fails because he did not (and cannot) establish that his constitutional rights were violated in any way. *Fourth*, Plaintiff's effort to impose *Monell* liability on San Francisco in his fourth and fifth causes of action fails because Plaintiff did not (and cannot) establish that the decisions he challenges were ratified by San Francisco's final policymaker or were made pursuant to an established practice or custom. *Fifth*, Plaintiff's first cause of action fails because he did not (and cannot) establish that San Francisco entered into any lease or agreement covered by San Francisco Administrative Code section 23.30, as required by this Court's previous ruling. See Order Granting Defendants' Motion to Dismiss Second Amended Complaint, ECF No. 91 at 15–18. *Sixth*, Plaintiff's second cause of action for fraud, misrepresentation, and deceit fails because the RFP Process was a legitimate and sincere process to find the best operator for the Fillmore Heritage Center. Unfortunately, none of the proposals demonstrated the ability to satisfy the financial and community benefits requirements of the RFP. *Finally*, Plaintiff's second cause of action for conspiracy to commit fraud, misrepresentation, and deceit fails because conspiracy is not a stand-alone cause of action under California law.

**4.  Motions**
*All prior and pending motions, their current status, and any anticipated motions.*

See Short Update, above.

**5.  Amendment of Pleadings**

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

Plaintiff filed a First Amended Complaint ("FAC") on March 18, 2019 (Dkt. # 29), a SAC on February 27, 2020 (Dkt. #73), and a TAC on September 4, 2020 (Dkt. #92; the operative complaint)—the latter two in response to Defendants' partially successful motions to dismiss under F.R.Civ.P. 12(b)(6) and with leave from the Court.

**6.  Evidence Preservation**

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

**Plaintiff's Position:**

Plaintiff's undersigned counsel has discussed the requirements of the ESI Guidelines with Plaintiff.  Plaintiff understands and emphasizes that the parties' obligation to preserve discoverable evidence extends to the individual Defendants in both their individual and official capacities.  However, Plaintiff has demonstrated in this case, as discussed at length in discovery joint letters and in Plaintiff's opposition to Defendants' MSJ, that Defendants have in fact withheld and/or destroyed key evidence, including particularly email correspondence between Mayor Breed and other City officials on the one hand, and cronies of theirs to whom they sought to steer control of the Fillmore Heritage Center.

**Defendants' Position:**

CCSF has reviewed the ESI Guidelines, and have taken reasonable steps to preserve discoverable evidence. As noted above, discovery has closed and all discovery issues have been litigated and adjudicated by Judge Corley.  Defendants have complied with all discovery requirements and court orders.

7. **Disclosures**

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.  For ADA and employment cases, see General Order Nos. 56 and 71.*

    **Plaintiff's Position:**

    Plaintiff has demonstrated in this case, as discussed at length in discovery joint letters and in Plaintiff's opposition to Defendants' MSJ, that contrary their initial disclosures requirements, Defendants concealed, withheld, and/or destroyed key evidence, including particularly email correspondence between Mayor Breed and other City officials on the one hand, and cronies of theirs to whom they sought to steer control of the Fillmore Heritage Center.

    **Defendants' Position:**

    Defendants made their Fed. R. Civ. P. 26 disclosures. As noted above, discovery has closed and all discovery issues have been litigated and adjudicated by Judge Corley.  Defendants have complied with all discovery requirements and court orders.

8. **Discovery**

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

    Discovery, including written discovery, depositions, and expert disclosure, is closed and completed.  See Short Update, above.

9. **Class Actions**

*If a class action, a proposal for how and when the class will be certified.*

    Not applicable.

10. **Related Cases**

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

    **Plaintiff's Position**:

    On August 16, 2018, the City sued the former owner of the Fillmore Heritage Center,

Michael Johnson, in state court, purportedly to recover Mr. Johnson's unpaid loan to the City. *CCSF v. Johnson*, San Francisco Superior Court Case No. CGC-18-568954.)  On October 12, 2018, Mr. Johnson cross-complained, alleging, *inter alia*, that the City had agreed to let him walk away from the loan when he surrendered the property.

Notably, In May 2015, Plaintiff Shiferaw signed a letter of intent with Mr. Johnson to purchase and operate the Center for payment by Shiferaw to Johnson of $6.4 million – the same as the minimum bid amount required by the Request for Proposal.  Plaintiff and Johnson presented this agreement—which provided for the repayment of HUD and City loans, viable entertainment, restaurateurs, and other tenants, along with a community benefit plan to ensure community participation—to City officials.  The City did not respond.  Instead, the City simply retook possession of the space (in June 2015), and thereafter left it shuttered for many months.

**Defendants' Position**

Mr. Johnson defaulted on the loan from CCSF. As a result, CCSF took possession of Mr. Johnson's leasehold, which was used to secure the loan. On March 29, 2019, the San Francisco Superior Court sustained without leave to amend the CCSF's demurrer to Mr. Johnson's cross-complaint alleging a breach of the lease agreement for the property.  The City's demurrer to the second amended cross-complaint and the parties' cross motions for summary judgment are set for hearing on June 24, 2022 in San Francisco Superior Court. Trial is set for August 22, 2022.

**11.  Relief**
*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

**Plaintiff's Position**:

Plaintiff seeks injunctive relief to safeguard the Fillmore Heritage Center for use, as intended, as a community cultural and financial resource, and monetary relief in amounts to be determined by the trier of fact, based on his wasted expenses complying with a fraudulent RFP process; his lost expectancy as the clearly and only qualifying bidder for the RFP; Defendants'

discriminatory refusal to consider his agreement with Michael Johnson to purchase the Center; and Defendants' waste of taxpayer resources by steadfastly failing and refusing to create or adhere to a process that would reopen the Center to serve as an economic engine in the Fillmore District.

### Defendants' Position

**CCSF**:  CCSF contends that Plaintiff is entitled to no relief, injunctive or monetary.

## 12. Settlement and ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred option and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

### Plaintiff's Position:

The parties mutually sought and were referred to Magistrate Robert Illman for settlement discussions.  The parties, through counsel, met once (on June 25, 2019) and have conferred by phone on several occasions with Magistrate Illman, separately and together.  The parties were supposed to meet again in front of Magistrate Illman on January 13, 2020, but defendants declined to participate, and Magistrate Illman vacated that settlement conference date.

### Defendants' Position:

With respect to the settlement process with Judge Illman, Plaintiff has mischaracterized the City's position.  It is not accurate that the "defendants declined further participation" in the settlement process with Judge Illman.  During a January 8, 2020 call with Judge Illman, the City stated that it could not accept Plaintiff's settlement proposal. Defendants believe that further settlement talks would not be useful until the Court rules on the pending motions.

## 13. Consent to Magistrate Judge For All Purposes

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*   _____ YES    __X__ NO

**14.  Other References**

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

    No.

**15.  Narrowing of Issues**

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

    The issues in this case have been narrowed through a combination of Defendants' 12(b)(6) motions and the Court's rulings; Plaintiff's voluntary dismissals; and Plaintiff's amended pleadings.  The parties do not believe that they can voluntarily narrow any further issues.

**16.  Expedited Trial Procedure**

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.  If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

    No.

**7.  Scheduling**

*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

    Discovery is closed and this case is pending a ruling on Defendants' Motion for Summary Judgment/Partial Summary Judgment.  See Short Update, above.

**18.  Trial**

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

    No trial date is currently set.  See Short Update, above.

    Plaintiff has demanded a jury trial, and estimates that a trial could be completed in approximately seven days.

**19. Disclosure of Non-party Interested Entities or Persons**

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

**Plaintiff's Position:**

So far as Plaintiff is aware, other than Plaintiff and his companies who are named parties to the action, Michael Johnson and his companies may have a financial interest in the subject matter in controversy, in that the City is seeking to recover from Mr. Johnson loan money which Plaintiff offered to cover in Plaintiff's purchase agreement and letter of intent with Mr. Johnson, as referenced above.

**Defendants' Position:**

By the terms of Civil Local Rule 3-15(a), CCSF, as a governmental entity, is exempt from this certification requirement.

**20. Professional Conduct**

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

Yes.

**21. Other**

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

None known.

Dated: March 10, 2022          *s/ Ben Rosenfeld*
_____
                               Counsel for Plaintiff Agonafer Shiferaw


Dated: March 10, 2022          *s/ Thomas S. Lakritz*
_____
                               Counsel for San Francisco Defendants